UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Christopher W. Roskelly, individually and as the
Personal Representative of the Estate of Kurt
W. Roskelly, Deceased,

    Plaintiff,

v.                                                   Case No. 10-13871
                                                   Honorable Sean F. Cox

Primerica Life Insurance Company,

    Defendant.
_____/

## OPINION & ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Christopher Roskelly filed this action individually and as the personal representative of the Estate of Kurt W. Roskelly against Kurt Roskelly's life insurance provider, Defendant Primerica Life Insurance Co., formerly known as Massachusetts Indemnity and Life Insurance Co.. Plaintiff's complaint alleges certain statutory violations by Primerica and requests a declaration that Kurt Roskelly is covered by the terms of the insurance policy that is at issue in this case and that Primerica must pay insurance proceeds to Kurt Roskelly's beneficiaries. The matter is currently before the Court on Defendant's Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on November 17, 2011. For the reasons set forth below, the Court shall GRANT Defendant's Motion for Summary Judgment.

BACKGROUND

This action arises out of a dispute over a life insurance policy (the "Policy") issued to

Kurt Roskelly, who is now deceased.  On or about August 26, 2010, Susan Roskelly, Kurt Roskelly's ex-wife, filed this action in Wayne County Circuit Court against Defendant Primerica Life Insurance Co. ("Primerica" or "Defendant").  On September 29, 2010, Primerica removed this case to this Court on the basis of diversity jurisdiction.

Susan Roskelly's original complaint alleged violations of M.C.L. § 500.4060 and § 500.4012, and requested a judgment against Primerica for the face value of the insurance policy.  The complaint alternatively requested a declaration that Kurt Roskelly is covered by the terms of the Policy and Primerica is bound to pay the proceeds upon proof of Kurt Roskelly's death.

After filing her complaint, Susan Roskelly realized that she lacked standing to bring a claim against Primerica because her divorce judgment terminated her interest in Kurt Roskelly's insurance policy.  On April 20, 2011, Plaintiff filed a First Amended Complaint wherein Christopher Roskelly ("Plaintiff"), Kurt Roskelly's son and the contingent beneficiary under the Policy, was substituted as the plaintiff in this action.  The First Amended Complaint alleges the same requests for relief as the original complaint.

According to Plaintiff's complaint, and the undisputed documentary evidence submitted by Defendant, the facts are as follows.

In 1989, Kurt Roskelly purchased a life insurance policy from Massachusetts Indemnity and Life Insurance Co., now known as Primerica Life Insurance Co.. (Complaint at ¶ 2., Ex. C).  He named his wife, Susan Roskelly, as the primary beneficiary, and his son, Christopher Roskelly, as a contingent beneficiary.  Part 4 of the Policy, under a subsection titled "GRACE PERIOD," provides:

> This Policy has a 31 day Grace Period for payment of each premium due after the first.  This means that if a premium is not paid on or

> before that date is due, it may be paid during the following 31 days, the Policy will stay in force. If the Insured dies during the Grace Period of an unpaid premium, the overdue premium will be deducted from the proceeds payable. Otherwise, if you fail to pay the premium by the end of the Grace Period, this Policy will terminate.

(Def's Br., Ex. B at 6).

On April 19, 1999, Kurt and Susan Roskelly divorced. Pursuant to the terms of their divorce judgment, Susan Roskelly was ordered to continue paying the premium payments on the Policy. The divorce judgment specifically stated:

> IT IS FURTHER ORDERED AND ADJUDGED that the Defendant [Susan Roskelly] shall pay the monthly premium on the $200,000 Life Insurance Policy on the Plaintiff [Kurt Roskelly], which is currently in force, and Plaintiff shall reimburse Defendant for said premiums. The minor children shall be made irrevocable beneficiaries on the said Life Insurance Policy, and Plaintiff shall pay said premiums until Plaintiff's Child Support Obligation terminates.

(Def's Br., Ex. O at 3).

In April 2006, Susan Roskelly received the annual Policy statement from Primerica that stated the payment due date was April 8, 2006. (Def's Br., Ex. C). Susan Roskelly testified that she contacted Kurt Roskelly after receiving the April 2006 statement and stated to him that she did not have enough money to pay the premium. (Susan Dep., Def's Br., Ex. J at 64-65.).

The April 2006 statement states, "IMPORTANT: ANY PREMIUM 31 DAYS PAST DUE WILL CAUSE YOUR POLICY TO LAPSE." (Def's Br. at 6; Plf's Resp. at 2). Susan Roskelly did not make the premium payment by April 8, 2006, nor did she make a payment by May 9, 2006 – 31 days after the statement due date. (Susan Dep. at 68).

On May 10, 2006, Primerica sent an automatic notice and "Late Payment Offer" to Kurt Roskelly at his last known mailing address, which was Susan Roskelly's address. (Def's Br., Ex.

3

G).  The Late Payment Offer states:

> Your premium payments are past due and your life insurance policy has lapsed.  We want to help you continue your valuable protection with this Special Offer.  Simply sign and date the form below and return it to us with our premium payment, which must be honored by your bank for this offer to be effective.  This offer expires if your premium payment is not received by June 04, 2006.

(*Id.*).  Susan Roskelly had received similar "special offers" in 1996, 1999, and 2001, after failing to pay the premium by the respective due dates.  By June 4, 2006, Primerica had not received the premium payment and the "special offer" expired.

On June 20, 2006, Primerica received a check from Susan Roskelly dated June 12, 2006. (Def's Br., Ex. H).  The check was automatically processed and deposited. On July 19, 2006, Primerica refunded Susan Roskelly for the amount of the check and stated in a letter, "We have received your payment in our office.  Unfortunately, your life insurance has terminated.  In order to apply for reinstatement, please complete the enclosed form(s)."  (Def's Br., Ex. I).  The letter described Kurt Roskelly's options for reinstatement and included an Application for Reinstatement.  The letter also states, "In all options above, your contestability period will begin anew."  (*Id.*).

The Application for Reinstatement asked specific questions about Kurt Roskelly's health history, treatment by physicians, and tobacco use.  (Def's Br., Ex. P).  The application also asked if Kurt Roskelly had ever been convicted of a DUI.  (*Id.*).  Susan Roskelly filled out the Application for Reinstatement without consulting Kurt Roskelly or inquiring about his current health or use of medications.  She answered "no" to the questions inquiring about whether Kurt Roskelly had any illnesses or had been treated by a physician or was under any medications. (*Id.*).  She also answered "no" to the question that asked if Kurt Roskelly had ever been

4

convicted of a DUI, despite knowing that he had been previously arrested for one. (Susan Dep. at 105). Susan Roskelly signed Kurt Roskelly's signature on the Application for Reinstatement and falsely dated the application May 14, 2006, incorrectly believing that to be the due date for the premium. (*Id*. at 90-91). Based on this information, Primerica approved the Application for Reinstatement, which was subject to a new two-year contestability period. (Def's Br., Exs. I & P).

On May 26, 2007, Kurt Roskelly died after suffering a heart attack. After receiving Kurt Roskelly's medical records, Primerica discovered that he was being treated for certain health conditions, including cirrhosis of the liver associated with alcohol and drug abuse, at the time Susan Roskelly submitted the Application for Reinstatement. (Def's Br., Exs. L & M). The medical records also revealed that Kurt Roskelly admitted to doctors that he abused alcohol and cocaine on a daily basis. (*Id*.).

After its investigation, Primerica rescinded the Policy, finding that the Application for Reinstatement was fraudulent and that Kurt Roskelly was not insurable at the time the Application for Reinstatement was submitted. As result, Primerica denied Susan Roskelly's claim for benefits under the Policy. In a letter to Susan Roskelly, Primerica explained its basis for denying her claim for payment, and stated, "Since this policy should not have been reinstated on Kurt Roskelly, we must return all premiums paid." (Def's Br., Ex. N). By declaring the reinstatement void, Primerica considered the Policy to have lapsed because Kurt Roskelly did not make a premium payment before the expiration of the "special offer." (Def's Br., Ex. Q).

On August 26, 2010, Susan Roskelly filed this action.

LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

ANALYSIS

I.   M.C.L. § 500.4060 Does Not Apply to the Policy.

In his First Amended Complaint, Plaintiff does not state which provision of M.C.L. § 500.4060, which is the standard nonforfeiture statute for life insurance, that Primerica has violated. M.C.L. § 500.4060 enumerates certain provisions relating to forfeiture or default that life insurance policies must contain if issued in the state of Michigan. Primerica contends that the nonforfeiture language required under § 500.4060 does not apply to the Policy because the Policy issued to Kurt Roskelly has no surrender cash value, which is money an insurance company pays to a policyholder in the event that the life insurance policy is voluntarily

6

terminated before its maturity date.

>M.C.L. § 500.4060(9) provides:
>
>>This section does not apply to any of the following:
>>
>>\* \* \*
>>
>>(g) ***A policy***, which provides no guaranteed nonforfeiture or endowment benefits, ***for which no cash surrender value***, if any, or present value of any paid-up nonforfeiture benefit, at the beginning of any policy year, calculated as specified in subsections (3) to (5), exceeds 2.5% of the amount of insurance at the beginning of the same policy year.

M.C.L. § 500.4060(9)(g) (emphasis added).

After reviewing the Policy, which is attached to Primerica's brief as Exhibit B, the Court found no provisions that entitled Kurt Roskelly to a cash surrender value upon voluntary termination of the Policy. Additionally, Plaintiff does not contest Primerica's position on this issue in his response brief. The requirements of § 500.4060 do not apply to the Policy because policies like the one at issue in this case, where the policyholders are not entitled to a cash surrender value, are explicitly excluded from the requirements of § 500.4060 under § 500.4060(9)(g). Accordingly, the Court finds that Primerica that it did not violate any provisions of M.C.L. § 500.4060.

II. <u>Primerica Provided Notice of Termination at Least 30 Days Prior to the Termination of Kurt Roskelly's Life Insurance Policy.</u>

Plaintiff does not contest that Susan Roskelly's Application for Reinstatement was fraudulently submitted and does not contest Primerica's decision to void the reinstatement. Instead, Plaintiff asserts that the Policy never terminated because Primerica did not comply with statutory requirements relating to notice of termination, and thus the Policy was still in effect at

the time of Kurt Roskelly's death. Plaintiff's First Amended Complaint specifically alleges that Primerica violated M.C.L. § 500.4012(b) because the Policy does not contain a 30-day notice of termination provision. Plaintiff also alleges that the Policy never terminated because Primerica did not provide a written notice to Kurt Roskelly at least 30 days prior to the termination of the coverage. Primerica asserts, however, that it sent notice of termination to Kurt Roskelly to his last known address, as required by § 500.4012(b).

> M.C.L. § 500.4012 provides:
>
>> Each life insurance policy shall contain the following provisions:
>>
>> (a) A grace period of 1 month for the payment of every premium after the first year, which may be subject to an interest charge, during which month the insurance shall continue in force and which provision may contain a stipulation that if the insured dies during the month of the grace period, the overdue premium will be deducted in any settlement under the policy.
>>
>> (b) *That written notice shall be sent by the insurer to the policyowner's last known address at least 30 days prior to termination of coverage.* This subdivision does not apply to an insurer that collects a majority of its annual premium in person.

M.C.L. § 500.4012 (emphasis added).

"In a diversity action involving insurance claims, a federal court applies the law of the forum state as set forth by the state's highest court." *Lewis v. State Farm Fire and Casualty Co.*, 238 F.3d 422 (Table), 2000 WL 1828711 at *2 (6th Cir. 2000). "Under Michigan law. . . the rules for construction of an insurance contract are the same as for any other written contract." *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 942 (6th Cir. 1993).

As an initial matter, the Policy complies with § 500.4012(a) because it expressly includes a "grace period" provision. As stated above, Part 4 of the policy, under a subsection titled

8

"GRACE PERIOD," provides:

> This Policy has a 31 day Grace Period for payment of each premium due after the first. This means that if a premium is not paid on or before that date is due, it may be paid during the following 31 days, the Policy will stay in force. If the Insured dies during the Grace Period of an unpaid premium, the overdue premium will be deducted from the proceeds payable. Otherwise, if you fail to pay the premium by the end of the Grace Period, this Policy will terminate.

(Def's Br., Ex. B at 6). Plaintiff does not contest that this language is sufficient to meet the requirements of § 500.4012(a).

What is in dispute, however, is the date on which Primerica provided Kurt Roskelly with the 30-day notice of termination, as required by M.C.L. § 500.4012. Primerica contends that the notice of termination was the April 2006 statement sent to Kurt Roskelly, which states, "IMPORTANT: ANY PREMIUM 31 DAYS PAST DUE WILL CAUSE YOUR POLICY TO LAPSE." Primerica notes that Susan Roskelly confirmed in her deposition that she, in fact, received this April 2006 statement and that she spoke to Kurt Roskelly about the statement. (Susan Dep. at 64-65). It is also undisputed that the April 2006 statement was sent to Kurt Roskelly's last known address.

Primerica further asserts that the coverage terminated on May 9, 2006 – 31 days after the April 8, 2006 premium due date. Primerica contends that the May 10, 2006 "Special Offer" letter served only to provide an extra period of time to make a payment and reinstate the policy without submission of a reinstatement application.

Primerica maintains that the term "lapse," as used in its April 2006 statement to Kurt Roskelly, is used to mean "terminate." In support, Primerica cites *Federal Life Ins. Co. v. Rumpel*, 102 F.2d 120 (6th Cir. 1939) and *Johnson v. National Life & Acc. Ins. Co.,* 257 Mich.

9

335 (1932), wherein the courts use the term "lapse" as a synonym for forfeiture of the insurance policies at issue. Additionally, Primerica states that the term "lapse" is commonly defined as "*insurance*: the termination of coverage following a failure to pay the premiums," COLLINS ENGLISH DICTIONARY (10th ed. 2009), and as "the termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred." BLACK'S LAW DICTIONARY (9th ed. 2009).

Plaintiff, however, contends that the use of the word "lapse," rather than "terminate," in the April 2006 statement makes the notice ambiguous and therefore fails to provide for proper notice of termination. Plaintiff further asserts that "lapse" does not mean "terminate" and instead means "slipping into a less desirable condition." (Plf's Resp. at 7). Plaintiff states that the April 2006 statement served only as a notification of a "lapse," or grace period, and that at the conclusion this 30-day lapse period, the Policy was still in effect. Moreover, Plaintiff contends that the "special offer" letter, dated May 10, 2006, served as the true notification of termination, and that the special offer letter only provided 25-days notice of termination. It is Plaintiff's position that the Policy only terminates if the policyholder fails to pay the premium before the conclusion of the special offer date, which in this case was June 4, 2006. Because the special offer letter only provided 25-days notice, however, the termination date of June 4, 2006 did not take effect. Thus, according to Plaintiff, the policy never terminated.

In support of his position that "lapse" does not mean "termination," Plaintiff provides the deposition testimony of Cherl Talbert, a claims adjuster with Primerica.[1] In her deposition, Ms.

---

[1]Plaintiff also relies on *Cash v. Metlife Investors Insurance Co.*, 2005 WL 1427714 (W.D. Mich. 2005), in support of the position that a "lapse" does not constitute a "termination." In *Cash*, an insured's failure to pay premiums did not result in a policy termination, but instead

Talbert states, "The lapse notice went out on May 10th, and it advised them that they had an additional maybe couple of weeks to send in a payment to avoid the reinstatement." (Talbert Dep., Plf's Resp. at 29). Ms Talbert also attempts to differentiate between a lapse and termination, stating:

> And that is why I say there is a difference between termination. The policy is in a lapse state. At the end of that grace period – there's that 30-day grace period – and that expired approximately May 8th, so the system generates that lapse notice on May 10th advising the client that their policy is lapsed but that we would accept a late payment of premium to avoid the reinstatement if they could get it in by that expiry date, which was June 4th.

(*Id.* at 31).

In an insurance contract dispute, the effective date of termination must be construed from the terms of the policy. An insurance policy is ambiguous if, after reading the entire insurance policy, its language can be reasonably understood in differing ways. *Farm Bureau Mutual Ins Co v. Nikkel*, 460 Mich. 558, 566 (1999). Moreover, an insurance policy must be read as a whole to determine and effectuate a party's' intent under the Policy. *Hastings Mut. Ins. Co. v. Safety King, Inc.*, 286 Mich.App. 287, 292 (Mich.App. 2009). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Id.*

In this case, the Policy's provision on the date of termination is unambiguous. The

---

caused the policy to convert to a term life insurance policy. The facts in *Cash*, however, are distinguishable from the facts surrounding this case. The court in *Cash* addressed a different type of policy than the one in this case and the insurance company explicitly used the term "terminate," when referring to the policy's termination date. *Cash* cannot be used to interpret the date of termination in this case because the facts in *Cash* were unique to the type of policy at issue.

Policy expressly states, "[I]f a premium is not paid on or before that date is due, it may be paid during the following 31 days, the Policy will stay in force. . . if you fail to pay the premium by the end of the Grace Period, this Policy will terminate."  In other words, the Policy states that, if the policyholder fails to pay the premium, the Policy terminates 31 days after the premium due date.

Based upon unambiguous language of Part 4 of the Policy, Primerica uses the terms "lapse" and "terminate" interchangeably.  To interpret the term "lapse" to mean anything other than "terminate" would be inconsistent with the Grace Period provision of the Policy.  Thus, in viewing Primerica's actions in the context of the Policy, the Court finds that the April 2008 statement provided notice of termination to Kurt Roskelly within 30 days of termination, as required by M.C.L. § 500.4012(b).  If anything, the May 10, 2006 lapse notice and "special offer" served as an extension of the grace period contemplated in the April 2006 statement.

The statute merely requires "[t]hat written notice shall be sent by the insurer to the policyholder's last known address at least 30 days prior to termination of coverage."  Primerica satisfied this requirement with its April 2008 statement.  Construed in a light most favorable to Plaintiff, the Policy terminated no later than June 4, 2006 – the expiration of the grace period extension provided in the May 10, 2006 "special offer" letter.  It is undisputed that Susan Roskelly mailed her check on June 12, 2006 – 8 days after the latest possible interpretation of when the policy terminated.  Thus, the Policy terminated and Primerica gave notice to of the termination at least 30 days prior to the termination of coverage.  As a result, Christopher Roskelly is not entitled to any proceeds under the Policy.

## CONCLUSION

For the reasons states above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Court

Dated: December 7, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 7, 2011, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager
